

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

Cornelius Davis and Anjenita Davis,    )
    )
    Plaintiffs,    )
    )    No. 19-cv-02186
    v.    )
Mortgage Research Center, LLC, d/b/a    )    Hon. Charles R. Norgle
Veterans United Home Loans,    )
    )
    Defendant.    )
    )

## ORDER

Defendant's Motion to Dismiss for Failure to State a Claim [20] is granted. The case is dismissed with prejudice as to Count 1, and dismissed without prejudice as to Counts 2 and 3.

## MEMORANDUM OPINION

Before the Court is Defendant Mortgage Research Center's ("Veterans") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs Cornelius and Anjenita Davis ("the Davises") bring three counts against Veterans stemming from its incorrect disclosure regarding the amount of money that would be escrowed each month as a part of a loan the Davises took out from Veterans. They attempt to recover under the federal Truth in Lending Act ("TILA") (15 U.S.C. § 1601),[1] the Illinois Consumer Fraud Act,[2] and common law breach of contract.

For the following reasons, the Court dismisses the TILA claim, as it finds that Veterans' disclosure was a permissible estimate. The Court declines to exercise its discretion to decide the remaining state law matters. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to

---

[1] Specifically, 15 U.S.C. § 1639d. Section 1639d was enacted as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act. The Section amended the Truth in Lending Act, and was passed to "stop or mitigate a number of abusive and deceptive practices related to escrow accounts, mortgage servicing, and appraisal practices." Hymes v. Bank of Am., N.A., No. 18-CV-2352 (RRM) (ARL), 2019 WL 4888123, (E.D.N.Y. Sept. 30, 2019) at *4.
[2] 815 ILCS 505/2.

exercise supplemental jurisdiction over a claim [when] the district court has dismissed all claims over which it has original jurisdiction"). The case is dismissed.

## FACTS

According to Plaintiffs' First Amended Complaint ("FAC"), they purchased a home on July 23, 2018. They financed the purchase through a VA loan[3] from Defendant, a limited liability company that offers residential mortgage loans. The Davises qualified for this loan because Mr. Davis served in the United States Army from 2006 to 2012.

An escrow account accompanied the loan. Plaintiffs plead that an escrow account "was required for the loan." Dkt. 17 ¶ 12. The escrow account facilitated the collection of payments for property taxes and homeowner's insurance. Veterans disclosed to the Davises in writing, both before and during closing, that the total escrow deposit would equal $273.82 per month. A draft estimate and settlement statement with closing disclosures submitted by the Davises confirm this. See Dkt. 17 ¶¶ 13, 17, 18, Exhibits A, B.

However, the escrow numbers provided by Veterans were inaccurate. In fact, the Davises would be responsible for twice the amount of taxes that Veterans originally disclosed to them. The flawed disclosure resulted from Veterans' use of only one of the home's two property identification numbers when calculating the escrow amount. With the additional taxes, the monthly escrow payment increased by $147.21 to $421.03 total. Veterans miscalculated the number despite having a property survey—attached to the FAC as Exhibit C—that included both property

---

[3] The VA home loan program was established by Congress to help veterans finance the purchase of homes. While subject to various regulations and requirements, VA loans can come with favorable terms like reduced down payments and limitations on closing costs. Private lenders offer VA loans in part because veterans are statistically more likely to pay off home loans, and the federal government guarantees (or insures) a certain portion of the loan depending on factors like the amount of the loan.

identification numbers.[4] Plaintiffs claim they relied on these disclosures when agreeing to enter into the loan and purchase the property. They state they would not have entered into this mortgage had they been given the accurate figures.

## STANDARD OF REVIEW

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the plaintiff is entitled to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554-557 (2007). This statement must provide sufficient plausible facts to put a defendant on notice of the claims against him. Brooks v. Ross, 578 F. 3d 574, 581 (7th Cir. 2009). The complaint "must provide enough factual information to state a claim to relief that is plausible on its face" and raise a "right to relief above a speculative level." Doe v. Village of Arlington Heights, 782 F.3d 911, 914 (7th Cir. 2015) (quoting Twombly, 550 U.S. at 555, 570). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citations and quotation marks omitted). In deciding a motion to dismiss, the Court accepts "all well-pleaded allegations of the complaint as true and view[s] them in the light most favorable to the plaintiff." Indep. Trust Corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 934 (7th Cir. 2012). However, legal conclusions pleaded within Plaintiff's complaint are not entitled to be taken as true. R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co., 895 F.2d 279, 281 (7th Cir. 1989).

---

[4] The Court does not find the property identification numbers on the survey, and Plaintiffs do not include the numbers in their FAC. However, the Court takes this fact as true for purposes of the Motion. After all, Veterans does not contest that it miscalculated the tax amount and does not mention the survey in its briefs.

## **DISCUSSION**

Plaintiffs claim that Defendant's faulty disclosure violates Title 15 of the United States Code, Section 1639d—specifically Sections 1639d(b) and 1639d(h). Defendant argues primarily that Plaintiffs have "failed [to allege] sufficient facts to show that this provision of TILA [(1639d)] even applies to their loan." Dkt. 20 at 2.

The statute lays out a scheme whereby certain loans, enumerated in Section 1639d(b), require escrow accounts. "No impound, trust, or other type of account for the payment of property taxes . . . may be required . . . except when [certain conditions are met under subsections 1639d(b)(1)-(4)]." 15 U.S.C. § 1639d(b). If a loan requires an escrow account under 1639d(b), then the lender must make certain disclosures to the consumer when offering the loan. 15 U.S.C. § 1639d(h) (requiring certain "[d]isclosures relating to mandatory escrow or impound account[s]" and stating that "[i]n the case of any . . . escrow account that is required under subsection (b), the creditor shall make [certain disclosures]"). These required disclosures include the amount of "estimated taxes" for the first year of the loan and the "estimated monthly amount payable to be escrowed for taxes." 15 U.S.C. § 1639d(h)(3)-(4).

The parties agree, as they must, that subsections (1) and (4) of 1639d(b) articulate circumstances that trigger the escrow requirement. Subsection 1639d(b)(1) requires such escrow accounts when they are "required by Federal or State law" and 1639d(b)(4) requires such accounts when "so required pursuant to regulation." 15 U.S.C. 1639d(b).

The parties disagree, however, regarding subsections (2) and (3). See 15 U.S.C. § 1639d(b)(2) (when "a loan is made, guaranteed, or insured by a State or Federal governmental lending or insuring agency"); 15 U.S.C. § 1639d(b)(3) (when "the transaction is secured by a first mortgage or lien on the consumer's principal dwelling having an original principal obligation that

4

[rises to a certain level]"). Plaintiffs argue that each of the four subsections in 1639d(b) lays out an independent circumstance that mandates an escrow account. For Plaintiffs, then, loans that qualify under any of the four subsections require 1639d(h) disclosures. Veterans, however, argues that subsections (1) and (4) are the only subsections that statutorily mandate escrow accounts. For Veterans, subsections (2) and (3) merely *allow* banks to choose whether to mandate escrow accounts when offering these types of loans to consumers.

The Court acknowledges that there is a reasonable basis for Defendant's argument, based on the plain language of the statute. The statute states that "[n]o . . . account . . . *may be required* . . . *except*" when certain conditions are met. 15 U.S.C. § 1639d(b). On its face, the Section seems to establish that banks can only require escrow accounts when the offered loan falls under one of the four subsections. This would not be a particularly strange scheme. After all, banks sometimes—but not always—require that escrow accounts accompany the loans they offer. See Lusnak v. Bank of Am., N.A., 883 F.3d 1185, 1188-90 (9th Cir. 2018) (noting that escrow accounts are often "set up in conjunction with a mortgage, either as a condition set by the lender or at the request of the borrower" and that "[a]s a condition for obtaining a mortgage, Lusnak was required to open a mortgage escrow account" into which he paid monthly").

Unfortunately for Defendant, it cites no case law regarding the issue and Congressional intent cuts against its argument. This Circuit, as well as other Circuits, give little guidance on the issue; indeed, neither party cites a single controlling case on the issue.[5] However, the Court is

---

[5] Both parties cite Lusnak v. Bank of Am., N.A., 883 F.3d 1185 (9th Cir. 2018). Defendant uses it to argue that 1639d requires escrow accounts only for higher-priced loans. See Dkt. 20 at 5 ("The purpose of Section 1639d was to require lenders to establish escrow accounts for certain loans – specifically, "higher priced loans" – and to mandate what disclosures were required with respect to those required escrow accounts."). But Defendant switches course in its Reply brief. There, it argues that 1639d(b)(3) simply allows that a lender require an escrow account "when the mortgage is a higher cost loan." Dkt. 26 at 2. The Court rejects this argument.

Plaintiff cites Lusnak to counter Defendant's citation to a VA pamphlet—dated April 2012—that states "VA does not require the lender to establish escrow accounts . . .". Dkt. 20 at 5. The pamphlet remains on the VA website.

aware of a very recent and relevant case. In discussing 1639d, our sister court in the Eastern District of New York noted that the Section "requires creditors, including national banks, to maintain mortgage escrow accounts on behalf of borrowers with federally guaranteed or insured loans . . . for a period of at least five years." Hymes v. Bank of Am., N.A., No. 18-CV-2352 (RRM) (ARL), 2019 WL 4888123, (E.D.N.Y. Sept. 30, 2019) at *4  (citing H.R. Rep. 111-94, at 49); see also H.R. Rep. 111-94, at *91 ("The instances in which an escrow account must be established include (1) when required by Federal or State law; (2) when a loan is made, guaranteed, or insured by a State or Federal lending or insuring agency; (3) when the rate on the first lien on the consumer's principal dwelling, as of the date the interest rate is set, exceeds the average prime offer rate for a comparable transaction by 1.5 percentage points; or (4) when required pursuant to regulation").

The Court agrees with Plaintiffs' interpretation of the statute. Loans that qualify under any of the four subsections of 1639d(b) necessarily require escrow accounts.

The question remains, though, whether Plaintiffs' loan qualifies under one of the subsections. The Court again agrees with Plaintiffs that their loan is a "loan made, guaranteed, or insured by a State or Federal governmental lending or insuring agency" under 1639d(b)(2). See Dkt. ¶¶ 12, 28; 15 U.S.C. § 1639d(b)(2). As Plaintiffs point out, a VA loan is a "loan to a veteran eligible for benefits" that "is automatically guaranteed by the United States." 38 U.S.C. § 3703. Indeed, the fact that the federal government guarantees a portion of VA loans is a principal reason why lenders offer such loans in the first place. In addition, the term "agency" "includes the Department of Veterans Affairs." 5 U.S.C. § 6329b(a)(1).

---

See Dkt. 26 at 2 n.1. Despite this, Plaintiffs argue that the pamphlet is irrelevant because it was issued before 1639d's effective date of January 21, 2013. Lusnak, 883 F.3d at 1197. The Court agrees with Plaintiffs..

The Court also notes that while Lusnak explains that "[s]ection 1639d mandates that creditors establish escrow accounts in connection with certain mortgages", the case is mute regarding what is required or simply allowed by 1639d(b). Neither party cites to any other case that interprets the escrow requirements of that section.

Despite the Court's ruling that the statute applies to Plaintiffs' loan, Plaintiffs' TILA claim fails as a matter of law. Plaintiffs allege that Veterans violated 1639d(h)(4) when it failed to provide an accurate monthly statement. Dkt. 25 at 4; 15 U.S.C. § 1639d(h)(4). Plaintiffs make no argument that disclosures were otherwise untimely, insufficient, or in violation of law.

There is no indication that any of Defendant's behavior violated Section 1639d. The statute explicitly requires a disclosure of an *estimate*, and Plaintiffs submit exhibits establishing that they were told that the numbers were estimates. See Dkt. 17, Exhibits A, B (noting that the "[e]stimated [e]scrow [a]mount can increase over time" and "[i]n the future, [y]our property costs may change and, as a result, your escrow payment may change."). While the estimate was inaccurate, Defendant disclosed it and characterized it as an estimate. Plaintiffs do not cite to any language in the statute or any case law that evinces a statutory requirement that the disclosed estimates be particularly accurate.

As such, under these facts, Plaintiffs fail to state a claim that Defendant violated the federal statute through its miscalculation. Plaintiffs essentially attempt to couch a negligence claim in the federal TILA statute and its disclosure requirements. This Court has found no basis—either in the statute itself or in relevant case law—to support such a claim when a Defendant explicitly labels the disclosure as an estimate.

There appears to be a lack of controlling authority regarding the estimates that are required under Section 1639d(h). Still, courts generally hold that these types of claims cannot be sustained after a lender has disclosed to the borrower that its quoted numbers are simply estimates. See Gifford v. PHH Mortg. Corp., No. 18-CV-260-SLC, 2019 WL 2355590 (W.D. Wis. June 4, 2019) at *8 (dismissing the TILA claim based on the statute of limitations and granting summary judgment on the state law claims, while noting that "Federal district courts considering [state law

claims of misrepresentation] have determined that incorrect estimates of escrow amounts and other figures cannot constitute misrepresentations of fact if the defendant clearly disclosed that the number in question was an estimate.");[6] see also Tietjen v. Ninneman, 2017 WL 5634878, (E.D. Wis. Sept. 29, 2017) at *5 (no misrepresentation of fact about pension where Pension Estimate Form made clear that figure used was estimate); Kirby v. Bank of Am., N.A., 2012 WL 1067944, (S.D. Miss. Mar. 29, 2012) at *10 ("This Court agrees that the Defendants clearly disclosed that the tax escrow amount was an estimate and thus it was not a misrepresentation."); Abel-Malak v. JP Morgan Chase Bank, N.A., 748 F. Supp. 2d 505, 514 (D. Md. 2010) (holding that an escrow estimate during a real estate settlement was not false as a matter of law because it was explicitly deemed an estimate); Clarke v. Fid. Bank, No. 1:14-CV-3287-AT-ECS, 2015 WL 11549240 (N.D. Ga. June 4, 2015) at *3 (dismissing TILA claim as time-barred while noting that "Plaintiff has cited no authority, either in his complaint or in his response to Defendant's motion to dismiss, that [estimating escrow based upon preceding tax amount] violates TILA" and "[f]urthermore, Plaintiff alleges that Defendant possessed all the information necessary to properly calculate Plaintiff's taxes and should have been aware that Plaintiff was not entitled to the same property tax exemptions as the sellers, but he has cited no authority for the proposition that, in the absence of fraud, failing to take into account a borrower's eligibility for potential tax exemptions that were available to the sellers, or to otherwise provide tax advice in a TILA disclosure statement, amounts to a violation of TILA, as harsh as the result in this case may seem.)

---

[6] The Court recognizes that the Plaintiff in Gifford survived an earlier Motion to Dismiss, before losing at the summary judgment stage. See Gifford v. PHH Mortg. Corp., No. 18-CV-260-SLC, 2018 WL 6047061 (W.D. Wis. Nov. 19, 2018). However, there the Court ruled for Plaintiff because it was not "yet clear how [Defendant] represented the escrow amount to Gifford[.]" Id. at 8. In contrast, documents here show that Plaintiffs were explicitly told that the escrow disclosures were estimates.

In sum, Count 1 is dismissed with prejudice. The Court declines to exercise supplemental jurisdiction as to Counts 2 and 3, and dismisses them without prejudice.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE:  October 16, 2019